[Cite as *State v. Martin*, 2013-Ohio-5866.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | CASE NO. 12 MA 131 |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| - VS - | ) | OPINION |
| | ) | |
| NICHOLAS MARTIN, | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |


CHARACTER OF PROCEEDINGS:      Criminal Appeal from
                              Youngstown Municipal Court,
                              Case No. 12 CRB 1105.


JUDGMENT:                     Affirmed.


APPEARANCES:
For Plaintiff-Appellee:        Attorney Dana Lantz
                              City Prosecutor
                              Attorney Kathleen Thompson
                              Asst. City Prosecutor
                              City of Youngstown Law Dept.
                              26 S. Phelps Street
                              Youngstown, OH  44503


For Defendant-Appellant:       Attorney Mark Carfolo
                              23 Lisbon Street, Suite K
                              Canfield, OH  44406


JUDGES:
Hon. Mary DeGenaro
Hon. Gene Donofrio
Hon. Cheryl L. Waite


                              Dated:  December 19, 2013

DeGenaro, P.J.

{¶1} Defendant-Appellant, Nicholas Martin, appeals the decision of the Youngstown Municipal Court convicting him of one count of misdemeanor assault and sentencing him accordingly. On appeal, Martin argues that his conviction is not supported by sufficient evidence and is against the manifest weight of the evidence. Upon review, Martin's arguments are meritless. Accordingly, the judgment of the trial court is affirmed.

**Facts and Procedural History**

{¶2} On May 19, 2012, Nicholas Martin was charged by complaint with one count of assault (R.C. 2903.13(A)), a first-degree misdemeanor. The case proceeded to a bench trial on June 18, 2012. At the close of the City's case and his own, Martin moved to dismiss the case pursuant to Crim. R. 29, which was denied by the trial court. Martin was found guilty of assault, and sentenced to the maximum prison term of six months as well as a $500 fine plus costs. Martin timely appealed, and on July 18, 2012, the trial court granted Martin's motion for a stay of execution of his sentence.

{¶3} The City called three witnesses. The victim, Wayman Washington, testified that he had known Martin for about six months to one year prior to the incident. Martin was Hannah Fabian's neighbor, who Washington had known for about 25 years. On the day of the incident, Washington was at the Fabian household installing security doors. As Washington was working on the project, Martin, who was driving by, got out of the car, and approached Washington, screaming at him about the installation of the security doors. Washington described Martin as "crying," "acting crazy," "psychotic," and "just like a wild man." During the encounter Martin "got in [Washington's] face" with Washington pushing Martin back twice, but on the third instance Washington punched Martin, which led to a fight. At this point, Washington claimed he "kind of really blanked out" and did not remember what happened until he put Martin in a headlock after both of them had fallen to the ground. Washington testified that during the scuffle he was bitten multiple times and suffered some scratches, and that he smelled alcohol on Martin that day.

{¶4} On cross, Washington testified that he was installing security doors on the house because Fabian was afraid that Martin "was going to come to her house in some

kind of way." He also admitted that he pushed Martin before Martin put his hands on him. Washington claimed that Martin charged at him, screaming things like "I'm Nicholas Martin. I'll kill you." Washington also conceded that Martin had a cast removed from his leg a few days prior to the altercation.

{¶5} Hannah Fabian testified that Martin was her neighbor, as well as her on-again/off-again boyfriend. She saw the altercation from inside her house and had her husband take her children upstairs for their safety. Although her view was obscured when Martin and Washington were on the ground, Fabian heard Martin "making strange noises that sounded like an animal." Fabian also testified that she had the security doors installed because sometime during the week prior to the altercation Martin grabbed her husband by the neck and that later that week Martin grabbed her by the face and arms.

{¶6} On cross, Fabian admitted that neither she nor her husband filed police reports following the prior altercations and that she hired Martin in the past to perform various tasks around her house. She denied owing Martin any money for those services and also denied agreeing to loan him any money. She then admitted that Martin was supposed to accompany her and her son to the zoo on the Thursday before the incident.

{¶7} Robert Eshenbaugh, one of the responding officers, testified that Martin "made a comment that he had been up all night, drinking." Eshenbaugh explained that he and his partner arrested Martin because witnesses told them that Martin was the aggressor and, also because Washington had "the majority of injuries on him." In fact, Eshenbaugh said he did not notice any visible injuries on Martin upon arrest.

{¶8} On cross, Eshenbaugh admitted that when he arrived on the scene, Washington was not there and he asked Fabian to get Washington back to the scene. Next, he related Martin's account of the incident; that Martin had gotten into a fight with Washington and offered no explanation of the circumstances.

{¶9} Martin elected to testify, explaining that on the evening before the fight he had been drinking because his wife had been the victim of a purse snatching. He went to the Fabian household to ask about a $4,000 loan that he claimed Fabian had agreed to give to him. Martin testified that he was attempting to walk around Washington so he

could go into Fabian's house to speak to her. Martin further explained that his leg had been broken and the cast had been removed three days prior to the incident and that while it was recommended that he wear an air cast, he could not afford one. Regarding the altercation with Washington, Martin testified that he "never struck him, never struck him, and I did not even bite him until he was choking me." Martin explained he and Washington had "never had any problems" prior to this incident and that "I actually like the guy [Washington.]" Martin also claimed that the police told him that they had video evidence of him assaulting Washington.

{¶10} On cross, Martin claimed that Fabian actually handed him $4,000 earlier in the week. However, he gave it back to her to collect it later, because, as a former drug addict, he did not feel comfortable holding it. He said he went back to Fabian's house to confirm she would still loan him the money. Martin testified that he did not care about Washington installing the door, but described Washington's actions as "thumbing his nose in my business." Martin admitted he was distraught and crying when he went to the Fabian household.

## Sufficiency of Evidence and Manifest Weight of Evidence

{¶11} In his sole assignment of error, Martin asserts:

{¶12} "The trial court denied appellant due process under the Fourteenth Amendment due to the fact he was found guilty of assault pursuant to 2903.12(A) when said conviction was not based upon sufficient evidence displaying appellant's guilt beyond a reasonable doubt and the trial court's verdict was inconsistent with the evidence and testimony presented at trial."

{¶13} Although Martin raises sufficiency of the evidence as error, in his brief, most of Martin's arguments focus on the manifest weight of evidence. Regardless, we will address each issue independently.

{¶14} Sufficiency of the evidence is the legal standard applied to determine whether the evidence is legally sufficient as a matter of law to support a conviction. *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997). Thus, sufficiency is a test of adequacy and raises a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678

N.E.2d 541 (1997). In reviewing the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Smith* at 113.

{¶15} Martin was convicted of one count of misdemeanor assault. "No person shall knowingly attempt to cause physical harm to another or to another's unborn." R.C. 2903.13(A). "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B). Physical harm is defined as "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3).

{¶16} Here, Washington testified that during the scuffle, he was bitten multiple times and suffered some scratches, and pictures of his injuries were admitted into evidence. Viewing the evidence in a light most favorable to the prosecution, the physical harm element of assault is satisfied. Further, there is sufficient evidence that Martin acted knowingly. Martin never said that he felt unclear about what he was doing. Nor does he testify to gaps in his memory or lack of control. In fact, he claimed to have a clear plan as to why he went to the Fabian household. Viewing the evidence in a light most favorable to the prosecution, the elements of misdemeanor assault have been established. Thus, Martin's argument that his assault conviction is insufficient as a matter of law is meritless.

{¶17} In contrast to sufficiency, "[w]eight of the evidence concerns the inclination of the *greater amount of credible evidence,* offered in a trial, to support one side of the issue rather than the other." (Emphasis sic.) *Thompkins*, *supra*, at 387. A conviction will only be reversed as against the manifest weight of the evidence in exceptional circumstances. *Id.* This is so because the trier of fact is in a better position to determine credibility issues, since it personally viewed the demeanor, voice inflections and gestures of the witnesses. *State v. Hill,* 75 Ohio St.3d 195, 204, 661 N.E.2d 1068 (1996); *State v. DeHass,* 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967). To determine whether a verdict is against the weight of the evidence, an appellate court must review the entire record,

weigh the evidence and all reasonable inferences and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins,* at 387.

{¶18} At trial, there was conflicting testimony regarding who was the aggressor. Martin viewed himself as a depressed man who had been drinking and wanted to talk to a friend about a loan he was promised. Martin therefore claimed he was not the aggressor and was only acting to defend himself after he was hit first. Washington, on the other hand, described Martin as crazed and enraged. Further, Fabian described Martin as someone who she feared based on past experiences. Finally, Washington sustained physical injury whereas Martin did not. The only undisputed fact is that Washington struck Martin first.

{¶19} Based upon this evidence, the City contends that Washington reacted to Martin's threatening actions. Conversely, Martin asserts that the weight of the evidence demonstrates that he had no reason to be aggressive toward Washington, and thus he was the victim. Thus, there is evidence to support both positions, and neither side's version of events was completely unbelievable. "When there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke*, 7th Dist. No. 99 CA 149, 2002-Ohio-1152, ¶13, citing *State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125 (1999).

{¶20} Martin challenges Fabian's credibility because of their romantic history and her failure to file police reports of past incidents. With regard to the first issue, both Martin and Fabian admitted that the two had a romantic history, even though Fabian is married. Martin points out that he was supposed to go to the zoo with Fabian and her son a few days prior to the incident. According to Martin, this seems inconsistent with the idea that Fabian is afraid of him. However, this could very well suggest that Fabian had grown afraid of Martin, insofar as Martin had accosted Fabian and her husband that week. Martin further questions Fabian's credibility noting that after these prior instances between

her family and Martin no police reports were ever filed. Yet, a few days after these events, Fabian had Washington install security doors on her house.

**{¶21}** Martin challenges Washington's credibility by arguing, inter alia, that Washington was having an affair with Fabian, or if not, that he disapproved of Martin and Fabian's relationship.

**{¶22}** In the end, it was well within the province of the trial court as fact-finder to determine the above matters of credibility and to resolve any inconsistencies in the evidence. In convicting Martin of assault, the trial court did not lose its way so as to create a manifest miscarriage of justice. Accordingly, Martin's manifest weight challenge error is meritless.

**{¶23}** Finally, Martin made reference to relevancy and hearsay objections in his brief; however, those were made in passing, Martin did not develop arguments on those points, and they were not assigned as errors in his brief. This falls short of what is required under the Ohio Rules of Appellate Procedure. Martin offers only a conclusory statement, as opposed to a properly developed argument as required by App.R. 16(A)(7). Thus, this argument will not be addressed. .

**{¶24}** In sum, Martin's assignment of error is meritless. The evidence here was sufficient to support a conviction for misdemeanor assault and it was not against the manifest weight of the evidence. Accordingly, the judgment of the trial court is affirmed.

Donofrio, J., concurs.

Waite, J., concurs.